**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **17-06247-hb**
Adversary Proceeding Number: **18-80017-hb**

**ORDER**

The relief set forth on the following pages, for a total of 13 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**10/10/2018**



US Bankruptcy Judge
District of South Carolina

Entered: 10/10/2018

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Wanda Painter Herrin,<br><br><br>Debtor(s). | C/A No. 17-06247-HB<br><br>Adv. Pro. No. 18-80017-HB<br><br>Chapter 13<br><br>**ORDER** |
| Connector 2000 Association, Inc. aka Greenville Toll Road,<br><br><br>Plaintiff(s),<br><br>v.<br><br>Wanda Painter Herrin,<br><br><br>Defendant(s). | |

**THIS MATTER** came before the Court for trial on the Complaint filed by Connector 2000 Association, Inc. aka Greenville Toll Road ("Connector"). The Joint Pretrial Order setting forth stipulated facts and issues for consideration is hereby incorporated.[1] Connector asserts its claims resulting from toll road violations under S.C. Code Ann. § 57-5-1495 are nondischargeable debts pursuant to 11 U.S.C. § 523(a)(2)(A). In response, Debtor Wanda Painter Herrin requests that if the debts are discharged, she be granted a judgment against the Connector for her attorney's fees and costs in defending this action pursuant to 11 U.S.C. § 523(d).

Stanley H. McGuffin represented the Connector and F. Lee O'Steen appeared on behalf of Herrin. Peter Femia, President of the Connector, and Herrin testified. After considering the evidence and observing the credibility of the witnesses, the Court makes the

---

[1] ECF No. 10, filed Aug. 2, 2018.

following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52,[2] and finds that the debts owed to the Connector are dischargeable but Herrin is not entitled to relief under § 523(d).

### FINDINGS OF FACT

1. The Connector operates a controlled access facility road in South Carolina known commonly as the connector and/or Greenville Southern Connector Toll Road (the "Toll Road"). The Toll Road is subject to the provisions of S.C. Code Ann. § 57-5-1010, *et seq.*

2. The Connector is entitled to collect tolls and penalties for toll violations in accordance with S.C. Code Ann. §§ 57-5-1490 through 1495.

3. In 2013, Herrin purchased a Ford Focus hatchback.

4. Herrin allowed Tyler Hammond to use her vehicle. Herrin and Hammond became business partners in early 2014 when they decided to start a furniture refurbishing business. The vehicle was often used in furtherance of their business venture to pick up furniture, equipment, and supplies, and to seek out customers. Hammond would use the vehicle for days at a time.

5. Beginning in late 2013, Herrin's vehicle was involved in numerous toll violations on the Toll Road. The violations occurred by driving the vehicle in "Palmetto Pass" lanes, which do not have operators or gates to stop vehicles from passing through, while not having a corresponding transponder and account to draw from to pay the tolls.

---

[2] Made applicable to this adversary proceeding pursuant to Fed. R. Bankr. P. 7052.

6. For each toll violation, a use charge ranging from $1.00 - $1.75 was incurred plus a $25.00 administrative fee or civil penalty.[3] Herrin was the owner of the vehicle at the time each of the toll violations occurred. As the owner of the vehicle, Herrin is jointly and severally liable with any driver of the vehicle pursuant to S.C. Code Ann. § 57-5-1495(B).[4]

7. The Connector notified Herrin of the toll violations by sending her notices in the mail to her residence. A First Notice to Pay Toll ("First Notice") includes the following instructions:

> **AFFIDAVIT OF NON-LIABILITY:**
>
> INSTRUCTIONS: You are charged with the violation described in this document. Under Section 57-5-1495 of the South Carolina Code of Laws, as amended, the owner and operator of the vehicle are jointly and severally liable. It is presumed that the registered owner of the vehicle was the person driving it. You were listed as the registered owner by DMV on the date of the violations. If you did not own the vehicle on that date, and/or were not the operator of the vehicle, complete the declaration below, in its entirety, and return it in the enclosed envelope.
>
> **The undersigned declares that the vehicle bearing the license plate on the Notice/Citation was not owned and/or operated by me on the violation date.**
>
> The vehicle was: (Check one only)
>
> ☐ Reported Stolen
> ☐ Leased or Rented Under a Written Agreement
> ☐ Sold/Released to Another Party
> ☐ Not Operated by Registered Owner
> ☐ Other (please provide explanation) _____

(emphasis in original).[5]

---

[3] It appears that the administrative fee or civil penalty was initially $10.00 and increased to $25.00 when the toll violations remained unpaid

[4] The state law provides, in relevant part:
> Notwithstanding another provision of law, when a vehicle is driven through a turnpike facility without payment of the required toll, the owner and operator of the vehicle is jointly and severally liable to the Department of Transportation to pay the required toll, administrative fees, and civil penalty as provided in this section. The department or its authorized agent may enforce collection of the required toll as provided for in this section.

S.C. Code Ann. § 57-5-1495(B).

[5] The First Notice includes further instructions of documentation that must accompany the affidavit.

3

8. The Connector mailed Herrin six First Notices dated February 21, 2014 for unpaid toll violations that occurred from October 26 through December 6, 2013.

9. The Connector sent Herrin another First Notice dated November 29, 2016, for unpaid toll violations that occurred from October 5 through November 24, 2016.

10. A Second Notice to Pay Toll ("Second Notice") is issued if the First Notice remains unpaid or if the vehicle incurs additional violations. The Second Notice instructs an owner who contests his/her liability to complete the form as follows:

> **The undersigned declares: If the vehicle(s) listed above was/were stolen, leased or rented at the time of the violation(s), provide the following information on the operator(s) of the vehicle(s) at the time of the violation(s).**
>
> The vehicle was: (Check one only)
>
> ☐ Reported Stolen
> ☐ Leased or Rented Under a Written Agreement

(emphasis in original).[6]

11. The Connector sent Herrin a Second Notice dated April 27, 2017 for unpaid toll violations that occurred from October 5, 2016 through January 8, 2017.

12. Additionally, two correspondences from the Connector to Herrin dated October 19, 2017, informed her of the debts owed for unpaid toll violations and of the Connector's intention to submit the debts to the South Carolina Department of Revenue for collection through the Setoff Debt Collection Act and/or Governmental Enterprise Accounts Receivable Collections Program until the debts were paid in full, unless Herrin submitted a written dispute that she owed the debts.

---

[6] The Second Notice includes further instructions of documentation that must accompany the declaration of non-liability.

4

13. The Connector sent Herrin another Second Notice dated February 8, 2018 for unpaid toll violations that occurred from January 20, 2017 through July 10, 2017.

14. Although Herrin allowed Hammond to use her vehicle, she testified that sometimes he would not return it despite her requests. She attempted to recover the vehicle from Hammond in 2016 and 2017. Herrin testified that she reported Hammond's refusal to return her vehicle to the Lancaster County Sheriff's Department. The Sheriff's Department advised Herrin that she would need to report the incident as a breach of trust (as opposed to a stolen vehicle) because she initially granted Hammond permission to use the vehicle.

15. Herrin testified that because the vehicle was neither stolen nor leased, she did not contest her liability for the toll violations committed by Hammond.

16. Femia testified that when the Connector is informed by an owner that his or her vehicle was used on the Toll Road as a result of a breach of trust, it will investigate the matter and try to pursue collection from the individual who operated the vehicle at the time of the violation.

17. Herrin filed a voluntary petition for Chapter 13 relief on December 15, 2017. She listed the toll violations on her Schedule E/F in the amount of $2,049.75 and did not list the debts as disputed.

18. The Connector filed Claim No. 10 in the amount of $2,242.10, and Claim No. 11 in the amount of $3,717.05, arising from the toll violations.

19. After Herrin filed for bankruptcy relief, her counsel informed the Connector's counsel that Herrin:

> does not know who would have driven that vehicle through a toll road without paying . . . The first she heard about it was as we were filing this case, she received a notice that she owed for toll charges. She totally disputes that she

5

ever drove her vehicle on a toll road without paying. She has no idea what or who would have drive[n] through a toll road.[7]

Further correspondence from Herrin's counsel to the Connector's counsel represented that:

> Debtor is saying she was not the driver of any vehicle that has ever run a toll nor been in any vehicle that ran a toll when while [sic] she was present, nor provided a vehicle to a person she knew was going or intended to run a toll or break any laws . . . The car was supposed to be used by a business partner who absconded with the vehicle . . .[8]

20. Despite these representations, Herrin's testimony at trial indicated that upon becoming aware of the toll violations, she knew Hammond was the individual who drove her vehicle.

21. Even though numerous toll violations occurred at various times over the span of several years, the evidence presented did not establish that Herrin was driving or in the vehicle when the violations occurred, that she knew where Hammond was driving when he had possession of the vehicle, or that she was aware of the toll violations as they occurred.

## DISCUSSION AND CONCLUSIONS OF LAW

### A. JURISDICTION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(a) and (b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and the parties have consented to this Court entering a final order.

### B. 11 U.S.C. § 523(A)(2)(A)

Section 523(a) of the Bankruptcy Code sets forth certain obligations that Congress deems excepted from a debtor's discharge. Counsel for the Connector acknowledges that the debts at issue fall within the discharge exception under § 523(a)(7), which applies to debts for

---

[7] Pl.'s Ex. 20 (email correspondence dated Feb. 13, 2018).
[8] Pl.'s Ex. 21 (email correspondence dated Mar. 2, 2018).

6

a fine or penalty to and for the benefit of a governmental unit. However, because those debts may be discharged under Chapter 13, *see* 11 U.S.C. § 1328(a), the Connector seeks relief pursuant to § 523(a)(2)(A).

Under § 523(a)(2)(A), debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" are not dischargeable. "In addressing exceptions to discharge, courts 'traditionally interpret the exceptions narrowly to protect the purpose of providing debtors a fresh start' but 'are equally concerned with ensuring that perpetrators of fraud are not allowed to hide behind the skirts of the Bankruptcy Code.'" *In re Warren*, 507 B.R. 862, 872 (Bankr. D.S.C. 2013) (quoting *Foley & Lardner v. Biondo (In re Biondo),* 180 F.3d 126, 130 (4th Cir. 1999)). "As the party asserting a debt owed to it is nondischargeable, Plaintiff bears the burden of proof, which is by a preponderance of the evidence." *In re Warren*, 507 B.R. 862, 873 (Bankr. D.S.C. 2013) (citing *Grogan v. Garner,* 498 U.S. 279, 291, 111 S. Ct. 654, 112 L.Ed.2d 755 (1991)).

The Supreme Court has distinguished between "false pretenses and representations" and "actual fraud" as provided in § 523(a)(2)(A) and recognized two distinct paths for nondischargeability under this provision. *Husky Int'l. Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586, 194 L. Ed. 2d 655 (2016). For a debt to be nondischargeable based on false pretenses and false representations, the creditor must prove:

> (1) that the debtor made a representation; (2) that at the time the representation was made, the debtor knew it was false; (3) that the debtor made the false representation with the intention of defrauding the creditor; (4) that the creditor justifiably relied upon the representation; and (5) that the creditor was damaged as the proximate result of the false representation.

7

*In re Brush*, 460 B.R. 448, 455-56 (Bankr. D.S.C. 2011) (citations omitted). "A false pretense involves an implied misrepresentation or conduct that is intended to create and foster a false impression, while a false representation involves an express representation." *In re Scarlata*, 127 B.R. 1004, 1009 (N.D. Ill. 1991) (citing *In re Guy*, 101 B.R. 961, 978 (Bankr. N.D. Ind. 1988), *aff'd in part sub nom. Matter of Scarlata*, 979 F.2d 521 (7th Cir. 1992).

> "Omissions . . . can constitute misrepresentations . . . where the circumstances of the case are such that the omissions or failure to disclose creates a false impression which is known by the debtor." *Household Fin. Corp. v. Kahler* (*In re Kahler*), 187 B.R. 508, 512 (Bankr. E.D. Va. 1995) (citing *Peterson v. Bozzano (In re Bozzano)*, 173 B.R. 990, 993 (Bankr. M.D.N.C. 1994)). A misrepresentation may exist notwithstanding the fact that the debtor did not "affirmatively state a misrepresentation or was never asked to disclose pertinent facts." *Id.*

*In re Abell*, C/A No. 17-00314, 2018 WL 3624462, at *5 (Bankr. D. Md. Jul. 26, 2018). Further, whether the debtor intended to defraud the creditor within the scope of § 523(a)(2)(A) is measured by the debtor's "actual state of mind . . . at the time the charges were incurred." *See Field v. Mans*, 516 U.S. 59, 70-72, 116 S. Ct. 437, 133 L. Ed.2d 351 (1995).

In order to establish that a debt is excepted from discharge based on "actual fraud" under § 523(a)(2)(A), the creditor must prove that: (1) the debtor committed actual fraud; (2) the debtor obtained money, property, services, or credit by the actual fraud; and (3) the debt arises from the actual fraud. *Ritz*, 136 S. Ct. at 1587-88. For fraud to be "actual" fraud there must be wrongful intent; constructive or implied fraud is not actual fraud. *Id.*

The Connector asserts Herrin's failure to act and report that she was not driving the vehicle and it was in Hammond's possession and continuing to allow the violations to occur in her vehicle amount to actual fraud, false pretenses, or false representations; therefore, the statutory fees imposed on Herrin under S.C. Code Ann. § 57-5-1495 should be nondischargeable under § 523(a)(2)(A). In support of this position, the Connector relies on

8

*Kozlowski v. Michigan Unemp't Ins. Agency*, 218 F. Supp. 3d 553, 555 (E.D. Mich. 2016), *aff'd sub nom. Andrews v. Michigan Unemp't Ins. Agency*, 891 F.3d 245 (6th Cir. 2018). The *Kozlowski* court upheld the bankruptcy court's finding that the statutory penalties imposed on the Chapter 13 debtor for his receipt of unemployment benefits to which he was not entitled were nondischargeable under § 523(a)(2)(A). There was no dispute that the debtor fraudulently obtained the unemployment benefits.[9] Rather, the issue was whether the debt owed for those benefits could fall under both § 523(a)(2) and (7). While the Court acknowledges that a debt may be nondischargeable under more than one subsection of § 523(a), the issue presented here is whether Herrin's underlying actions constitute false pretenses, false representations, or fraud for the statutory fees to be nondischargeable under § 523(a)(2)(A). Therefore, the Court does not find *Kozlowski* persuasive based on these facts.

The most instructive cases based on the circumstances presented here appear to be those involving a debtor's receipt of stolen property. In those cases, the debt was nondischargeable under § 523(a)(2)(A) only when the debtor who received the stolen property was involved in the scheme or conduct that resulted in the creditor's loss. *See In re Luedtke*, 429 B.R. 241, 262 (Bankr. N.D. Ind. 2010) (finding that a judgment debt arising from amounts the debtor received from his wife's embezzlement was dischargeable under § 523(a)(2)(A) because there was no evidence that the debtor worked with his wife to defraud the creditor or to thwart the creditor's recovery of its property (citing *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000)); *In re Sandoval*, 341 B.R. 282, 293-94 (Bankr. C.D. Cal. 2006) (finding

---

[9] The Michigan Unemployment Insurance Agency made prior administrative determinations that the debtor had "intentionally misled and/or concealed information to obtain benefits [the debtor] was not entitled to receive" and was "assessed a statutory fraud penalty of $16,669.00 under Mich. Comp. Laws § 421.54 due to [the debtor's] false representations and failure to disclose material facts." *Kozlowski v. Michigan Unemp't Ins. Agency*, 218 F. Supp. 3d 553, 555 (E.D. Mich. 2016), *aff'd sub nom. Andrews v. Michigan Unemp't Ins. Agency*, 891 F.3d 245 (6th Cir. 2018).

9

creditor cable provider's statutory damages for alleged violations of California's anti-piracy and anti-signal theft laws were dischargeable under § 523(a)(2)(A) because "the evidence presented by [the creditor] does not indicate who occupied the residence, any such pattern or conduct of theft, or any knowledge on [the debtor's] part that the decoders were allowing him to receive programming which he knew to be stolen."); *cf. In re Holt*, 24 B.R. 215, 215-16 (Bankr. E.D. Tenn. 1981) (finding the debtor who allegedly altered her electrical meter committed actual fraud and, therefore, the debt arising from the electricity theft was nondischargeable where the evidence indicated "a pattern of conduct by the occupants of the residence in question to use utility services from the [creditor] without paying for them" and the debtor "received the electrical service knowing that it was stolen").

Herrin owns the vehicle, so she is jointly and severally liable with the driver under South Carolina law. However, the evidence does not support a finding that Herrin was in the vehicle when the debts were incurred, that she participated in the decision to incur the debts, or that she was aware that the vehicle would be used to incur the debts at the time they were incurred. The evidence presented here does not indicate that there was a scheme or an effort on the part of Herrin to deprive the Connector of payment for the tolls. All that is known from the record is that Herrin allowed Hammond to use her vehicle, possibly for a joint business purpose, and the vehicle was not driven by Herrin when the toll violations occurred. The evidence further shows that after the Notices were sent by the Connector, Herrin knew Hammond had incurred charges for past toll violations. It also can be reasonably inferred that after several violations, Herrin knew Hammond may incur additional toll violations in the future. However, there was insufficient evidence to indicate that Herrin and Hammond were working in concert to defraud the Connector through Hammond's nonpayment of the tolls or

that Herrin knowingly benefitted somehow from Hammond's conduct.  "11 U.S.C. § 523(a)(2)(A)'s elements require more than passive knowledge and non-disclosure, or passive acquiescence." *In re Luedtke*, 429 B.R. 241, 262 (Bankr. N.D. Ind. 2010).  Accordingly, the evidence does not support a finding that Herrin committed actual fraud under § 523(a)(2)(A).

Additionally, while there is evidence that Herrin lacked candor or made misrepresentations when informally questioned by her attorney about how her vehicle was involved in the toll violations and who may have been driving,[10] there was insufficient evidence at trial to prove that when incurring the debt Herrin: made a false representation or omission to the Connector regarding payment of the tolls; used false pretenses or actual fraud to deceive the Connector; or had an intent to deceive the Connector or for the Court to infer that she intended to deceive the Connector.

Put simply, the evidence does not indicate that Herrin's conduct fits within the scope of § 523(a)(2)(A) to arise to false pretenses, a false representation, or actual fraud.  Therefore, the Connector has not met its burden under § 523(a)(2)(A) and the debts are dischargeable pursuant to § 1328(a).[11]

### C.  11 U.S.C. § 523(D)

Section 523(d) of the Code provides:

> If a creditor requests a determination of dischargeability of a consumer debt under section (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

---

[10] *See* Pl.'s Exs. 20 & 21.

[11] This finding is without prejudice to the Connector should this case be converted to another chapter.

11

11 U.S.C. § 523(d). To prevail under § 523(d), the debtor must establish that: (1) the creditor requested a determination of dischargeability under § 523(a)(2); (2) the debt is a consumer debt; and (3) the debt was found dischargeable. Upon a showing of these elements, the burden shifts to the creditor to demonstrate that the nondischargeability action was substantially justified. *See In re Malone*, C/A No. 10-02470-HB, 2011 WL 3800121, at *3 (Bankr. D.S.C. Aug. 29, 2011).

Under the Bankruptcy Code "[t]he term 'consumer debt' means debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8); *see also Cypher Chiropractic Ctr. v. Runski (In re Runski)*, 102 F.3d 744, 747 (4th Cir. 1996) ("In determining whether a debt is for 'personal, family, or household purposes' under § 101(8), courts look to the purpose for which the debt was incurred."); *In re Durant*, 586 B.R. 212, 219 (Bankr. D. Md. 2018) ("The core of the consumer debt definition thus concerns debt that an individual debtor undertakes to serve her private affairs."). The evidence presented does not establish that any debts owed to the Connector were consumer debts and no relief is due pursuant to § 523(d). *See In re Brashers*, 216 B.R. 59, 61 n.2 (Bankr. N.D. Okla. 1998) (concluding that there are (1) consumer debts which fall within the definition of § 101(8); (2) business debts, or debts incurred with a "profit motive," which are non-consumer debts; and (3) other non-consumer debts that are not incurred with a motivation for making a profit) (citing *In re Stovall,* 209 B.R. 849 (Bankr. E.D. Va. 1997)).

**IT IS, THEREFORE, ORDERED THAT:**

1. 11 U.S.C. § 523(a)(2)(A) does not bar the discharge of the claims of the Connector; and

2. no relief is due to Herrin pursuant to 11 U.S.C. § 523(d).

12